UNITED STATES of America, Plaintiff,

v.

Gary P. SAZAMA, an individual, and Gary P. Sazama, Ph.D., a Utah professional corporation, Defendants.

No. 1:98–CV–0044SB.

United States District Court, D. Utah, Northern Division.

Feb. 23, 2000.

Eric A. Overby, AUSA, U.S. Attorney Office, District of Utah, Salt Lake City, UT, for plaintiff.

Gil Athay, Michael R. Sikora, Salt Lake City, UT, for defendants.

## MEMORANDUM DECISION

SAM, Senior District Judge.

This matter is before the Court on plaintiff United States' Motion for Partial Summary Judgment. The Court has considered the parties arguments contained in the pleadings and elects, pursuant to DU-CivR7–1(f), to determine the matter on the basis of the written memoranda, without the assistance of oral argument.

### A. *Factual Background*

This case involves a civil action, filed by the United States subsequent to a criminal action arising out of the same operative facts, against Gary P. Sazama individually, and Gary P. Sazama, Ph.D., the professional corporation (hereafter collectively referred to as "Sazama") through which Sazama conducted business as a Licensed Clinical Psychologist in Logan, Utah.

From approximately June 1992 to August 1995, Sazama submitted 79 false insurance billings to Medicaid and 31 such claims to Civilian Health and Medical Program of the Uniformed Service ("CHAMPUS"), a federally funded medical benefits program established to provide financial healthcare assistance to uniformed service personnel and their families. In order to facilitate the fraudulent billing, Sazama hired unlicensed psychologists and unlicensed clinical social workers who followed Sazama's instruction and protocols.

In September 1996, Sazama was indicted by a Grand Jury on 66 counts of mail fraud (18 U.S.C. § 1341), false, fictitious and fraudulent claims (18 U.S.C. § 287), and aiding and abetting (18 U.S.C. § 2). In September 1997, Sazama entered into a Plea and Cooperation Agreement (the "Agreement") wherein he pled guilty to the first count of the pending Indictment which stated:

> False Claims under Title 18, Section 287 of the United States Code, charging that he made and presented to Medicaid, an agency of the United States, a claim, knowing such claim to be false, on or about June 10, 1992.

The Agreement also stated, *inter alia,* that "[t]he plea agreement, also, does not bar or compromise any civil or administrative claim pending or that may be made against the Sazama." In addition, Sazama agreed to make payments of $10,802.00 ($50.00 assessment + $7,000.00 fine + $3,752.00 restitution). In return, the prosecuting attorney successfully moved to dismiss the remaining 65 counts against Sazama.

On March 23, 1998, the United States initiated a civil lawsuit against Sazama alleging violations under the False Claims Act, 31 U.S.C. §§ 3729–3733 ("FCA") and common law fraud, based on the exact operative facts that gave rise to the earlier criminal charges against Sazama. In its request for relief, the United States sought treble damages in the amount of $34,137 (three times the $11,379 paid by Medicaid ($4,424) and CHAMPUS ($6,955)) and civil

penalties in the amount of $550,000 to $1,100,000 (based on common law fraud).

On October 1, 1998, plaintiff United States moved for partial summary judgment on the issues of liability and damages, arguing that no genuine issue of material fact existed as to civil liability as a result of Sazama's criminal plea. The issue of civil penalties was not part of the Motion for Partial Summary Judgment ("Motion").

Sazama opposed the Government's Motion, asserting the affirmative defense of laches. Sazama claimed that during the criminal settlement negotiations, the Government never manifested its intent to pursue civil damages. As a result, Sazama claimed that he relied on this omission, as well as on the then-existing status of double jeopardy law (as articulated in *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989)), when he negotiated his criminal settlement. Sazama further contended that a subsequent disavowal of the double jeopardy analysis occurred in *Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) and that he was materially prejudiced by the Government's delay in bringing a civil lawsuit (four months after the resolution of the criminal proceeding and after the change in double jeopardy law).

In response, the United States argued that the clear and unambiguous FCA language allowed a civil prosecution following a criminal prosecution, and neither *Halper* nor *Hudson* prevented the application of FCA provisions. While contending that the Supreme Court analysis in *Hudson* was the proper governing law, plaintiff United States noted that even under *Halper*, Sazama was not immune from civil proceedings. Finally, the United States asserted that Sazama's plea agreement itself left the door open for future civil actions and Sazama's "laches argument [was] a red herring, legally inappropriate as asserted against the United States, and erroneously sought under these facts." Reply Memorandum at 2.

## B. Summary Judgment Standard

In the current case, summary judgment is appropriate if no genuine issues of material fact exist, and the Government as the moving party is entitled to judgment as a matter of law. *Utah v. Babbitt*, 53 F.3d 1145, 1148 (10th Cir.1995). In making this determination, this Court must construe the facts and record in the light most favorable to Sazama as the party opposing the motion. Id.

## C. Analysis

### 1. No genuine issue of material fact

Defendant Sazama's Opposition Memorandum fails to cite any disputed facts, material or otherwise. Accordingly, the United States correctly asserts that "[a]ll material facts ... that are set forth with particularity in the statement of the movant will be deemed admitted for the purpose of summary judgment, unless specifically controverted by the statement of the opposing party...." DUCivR56–1(c). The facts set forth in the United States' Memorandum in Support of Motion for Summary Judgment ("Motion Memo") are not only sufficient to support its cause of action but are uncontroverted by Sazama, and are therefore rightfully deemed admitted.

In addition to Sazama's failure to identify disputed facts, the pertinent language of the FCA states that "a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements ... shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding...." 31 U.S.C. § 3731(d). In essence, then, the FCA provides an additional independent justification for eliminating any question of disputed material fact where a civil case arises out of the same operative facts as a preceding criminal case.

Here, the Government's civil action against Sazama arose from the identical set of facts upon which the criminal judg-

ment was made. Therefore, according to the FCA, Sazama is estopped from denying the essential elements giving rise to the current FCA-based civil action. Regardless, however, Sazama has failed to deny any of the factual elements set forth in the Government's Motion Memo.

### 2. Judgment as a matter of law

#### a. "Double Jeopardy"

■ Sazama's argument that the Government's civil proceeding violates the double jeopardy clause runs counter to legislative intent. The language of 31 U.S.C. § 3731(d), noted above, clearly implies that civil actions can be raised under the FCA based on the same facts as those addressed in criminal actions. Or, in Plaintiff's words, "For what purpose did Congress write this provision if not to apply to subsequent civil prosecutions of those previously convicted?" Reply Memorandum at 3. The language of the FCA seems to manifest Congressional contemplation of such scenarios as the one brought before this Court.

Furthermore, Sazama's plea agreement itself clearly provided for subsequent civil claims. The plea agreement, entered into on September 11, 1997, unambiguously states: "The plea agreement, also, does not bar or compromise any civil or administrative claim pending or that may be made against the defendant." Agreement at 2. Sazama claims that he "entered his plea believing that would be the end of it." Opposition Memorandum at 2. However, regardless of Sazama's "belief," he knew or should have known that a subsequent civil or administrative action was possible.

It is against the foregoing contextual background that Sazama asserts that the United States' civil action, under *Halper*, violates the double jeopardy clause. Arguably, the governing law regarding civil actions brought subsequent to criminal proceedings (as it applies to this case) is found in the analysis and holding of *Hudson.* However, while Sazama concedes that his double jeopardy argument fails under the *Hudson* analysis, the United States correctly maintains that even under *Halper*, it is entitled to summary judgment.

Sazama contends that "the status of the law in November of 1997 was clear: the Government could not pursue civil penalties based on the conduct for which Defendant was punished in the criminal case." Opposition Memorandum at 6. However, a close reading of *Halper* reveals that Sazama's conclusion is misguided.

In *Halper*, Irwin Halper submitted 65 fraudulent medical claims demanding a reimbursement of $12 per claim when the actual services rendered merited a reimbursement of only $3 per claim (for a total misrepresentation of $585). *Halper* at 437, 109 S.Ct. 1892. As a result, Halper was fined $5,000 and sentenced to imprisonment for two years. *Id.*

The Government then brought a civil action against Halper under the FCA, seeking civil penalties of $130,000 ($2,000 per false claim). *Id.* at 438. The case eventually reached the Supreme Court, which held that the Government's action, albeit civil, constituted a second "punishment" and therefore violated the double jeopardy clause. *Id.* at 449, 109 S.Ct. 1892. However, the Court noted that its holding was specific to the fact scenario presented in *Halper.*

> [W]e have recognized that in the ordinary case fixed-penalty-plus-double-damages provisions can be said to do no more than make the Government whole. We cast no shadow on these time-honored judgments. What we announce now is a rule for the *rare case*, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused.

*Id.* (emphasis added). The Court further noted that an FCA action alleging only one or two false claims would not fall within the purview of the double jeopardy clause. *Id.* at 451, n. 1, 109 S.Ct. 1892.

In the current case, the United States seeks damages, under the FCA, of $17,504 or approximately 4.7 times the amount of Sazama's admitted fraud ($3,752). The figure of $17,504 represents the statutorily mandated treble damages ($3,752 × 3 = $11,256) plus a single civil penalty of $10,000, less the amount already paid by Sazama in criminal restitution ($3,752). As the Government points out in its Reply Memorandum, this 4.7 to 1 ratio (recovery sought to total loss) is a far cry from the 222 to 1 ratio that motivated the *Halper* Court to establish "a rule for the rare case." [1]

In sum, even if Sazama would have accomplished the improbable by convincing this Court to apply *Halper* as the governing law in double jeopardy cases, the *Halper* analysis itself justifies granting the Government's Motion. The damages sought by the United States simply do not rise to the level of a second "punishment" as contemplated by the *Halper* Court. The Government's action does not violate the double jeopardy clause. Accordingly, Sazama's double jeopardy argument fails.

#### b. Laches

 It is a well-settled principle of law that, absent rare circumstances not present in the current case, the United States is not subject to the defense of laches. *See e.g., Federal Deposit Insurance Corporation v. Hulsey*, 22 F.3d 1472, 1490 (10th Cir.1994). In addition to the Tenth Circuit position, a majority of other circuits "have held that the doctrine of laches may not be asserted as a defense against the USA when it is acting in its sovereign capacity to enforce a public right or to protect the public interest, unless Congress has clearly stated an intent to the contrary." *United States v. Wright*, 850 F.Supp. 965, 967 (D.Utah 1993).

 Even if the United States were subject to the defense of laches, the undisputed facts of this case indicate that Sazama has not met the required laches element of being "unmistakably prejudiced." *Id.* at 968. Sazama claims that he has been prejudiced by the Government's delay in bringing a civil action following the criminal proceeding, principally because "the negotiating posture of the parties was such that a subsequent civil action simply was not anticipated during plea negotiations through sentencing, nor could such an action have been maintained until December 10, 1997, when the Supreme Court decided *Hudson* ...." Opposition Memorandum at 4.

So, in short, Sazama's laches argument is that by waiting four months to bring a civil suit, the United States' delay was prejudicial because of Sazama's misprognostication and the intermittent change in the double jeopardy analysis. However, Sazama's inability to discern the Government's future intent clearly does not rise to the level of prejudice, and, while it is true that *Hudson* disavows the double jeopardy exception established in *Halper*, even under the *Halper* analysis (as discussed above) Sazama's argument fails.

Accordingly, IT IS HEREBY ORDERED that Plaintiff United States' Motion for Partial Summary Judgment is GRANTED.

---

1. In *United States v. Barnette*, 10 F.3d 1553, 1559–60 (11th Cir.1994), the 11th Circuit, in a FCA case, held that "a 3.2 to 1 ratio simply does not lack a 'rational relation to the Government's loss.' Instead, such a ratio is very close to a 'fixed penalty roughly proportionate to the damage caused ... plus double damages.' The rule of *Halper* permits 'at least' that much." (Additional citations omitted).