873 So.2d 352 (2004)
The STATE of Florida, Appellant,
v.
Gabriel HARDEN, et al., Appellees.
No. 3D03-521.
District Court of Appeal of Florida, Third District.
March 10, 2004.
*353 Charles J. Crist, Jr., Attorney General, and Jason Vail and Charles M. Fahlbusch, Assistant Attorneys General, and Christopher M. Kise, Solicitor General, for appellant.
Anthony C. Vitale; G. Richard Strafer; Mark L. Shumaker; Manto & Kassebaum and Ronald J. Manto; Tony Moss; and Bennett H. Brummer, Public Defender, and Carlos Gonzalez, Assistant Public Defender, for appellees.
Sonnenshein Nath & Rosenthal (Washington, D.C.), Bruce Merlin Fried, Gadi Weinreich, Howard J. Young, Lisa A. Estrada and Jane Hyatt Thorpe, as amicus curiae.
Before COPE, GODERICH and SHEVIN, JJ.

CORRECTED OPINION
GODERICH, Judge.
The State appeals from an order granting the defendants' motion to dismiss the information and declaring Florida's Medicaid Provider Fraud Statute, § 409.920(2)(e), Fla. Stat. (2000), unconstitutional. We affirm.
On December 22, 2000, the State filed a nine-count information charging Gabriel Harden and nine other defendants with racketeering, conspiracy to commit racketeering, and Medicaid fraud. Specifically, in Counts 3-9, the State alleged that the defendants violated the "anti-kickback" provision of Florida's Medicaid Provider Fraud Statute, § 409.920(2)(e), Fla. Stat. (2000), by paying drivers, who were alleged to be "employed by or associated with" three corporate entities that were engaged in the business of providing dental services to children, a per head fee or commission for the "solicitation and transportation" of Medicaid eligible children to "dental facilities for treatment." Counts 1 and 2 charged the defendants with racketeering and conspiracy to commit racketeering, and were based on the same allegations as Counts 3-9.
On October 4, 2002, Harden filed a motion to dismiss the information arguing, among other things, that payment of wages by a Medicaid provider to its employees for the "solicitation and transportation" of Medicaid-eligible children "to dental facilities for treatment" was expressly protected by federal Medicaid statutes and regulations, the so-called "safe harbors," and that the State's attempt to criminally prosecute this federally protected activity was unconstitutional under the Supremacy Clause. U.S. CONST. art. VI, cl. 2. Thereafter, the other defendants adopted Harden's motion.
On December 12, 2002, the State filed its response arguing that the method of payment used by the providers to pay the drivers was unlawful. The State alleged that the provider would pay the driver $25 to $30 cash for each Medicaid-eligible child the driver could find and bring to the clinic. The State argued that this recruiting or solicitation of patients by Medicaid providers through its paid employees was unlawful under both federal and state law and amounted to kickbacks for patient referrals.
On January 10 and 31, 2003, the trial court heard arguments of counsel, and on February 18, 2003, the trial court granted Harden's motion to dismiss stating, in part:
[T]he State's attempt herein to prosecute, as a category of unlawful "remuneration" barred by Section 409.920(2)[(e)], the wages paid by Harden's *354 business, Dental Express, Inc., (i.e., an employer) to certain of its employees for the purposes of soliciting and transporting Medicaid-eligible patients to Harden's dental facilities is preempted by both an express provision of the federal Medicaid Act, 42 U.S.C. § 1320a-7b(b)(3), as well as a parallel administrative "safe harbor" provision, 42 C.F.R. § 1001.952(i).
Thus, the trial court applied implied conflict preemption analysis and found that section 409.920(2)(e), Florida Statutes (2000), was unconstitutional. Additionally, the trial court found that the mens rea requirement in section 409.920(1)(d), Florida Statutes (2000), as applied to section 409.920(2)(e), Florida Statutes (2000), was preempted by federal law and also unconstitutional. The trial court subsequently entered dismissal orders as to the other defendants. The State's appeal follows.
The State contends that the trial court erred by declaring section 409.920(2)(e), Florida Statutes (2000), unconstitutional and by dismissing the defendants' informations. Specifically, the State argues that Florida's anti-kickback statute does not conflict with the federal anti-kickback statute and that therefore the Florida statute is not preempted under the Supremacy Clause. We disagree.
Implied conflict preemption occurs when (a) compliance with both federal and state regulations is a physical impossibility, or (b) when a state law is an obstacle to execution and accomplishment of the objectives and purpose of a Congressional enactment. Pharmaceutical Research & Mfrs. of Am. v. Meadows, 304 F.3d 1197, 1206 (11th Cir.2002).
The federal anti-kickback statute, 42 U.S.C. § 1320a-7b (2000), titled "Criminal penalties for acts involving Federal health care programs," provides, in pertinent part:
(b) Illegal remunerations

* * *
(2) whoever knowingly and willfully offers to pay any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person
(A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, ...

* * *
shall be guilty of a felony....

* * *
(3) Paragraphs (1) and (2) shall not apply to

* * *
(B) any amount paid by an employer to an employee (who has a bona fide employment relationship with such employer) for employment in the provision of covered items or services....
At first glance, section 409.920(2)(e), Florida Statutes (2000), appears to track the language of the federal statute by making it unlawful to:
(e) Knowingly solicit, offer, pay, or receive any remuneration, including any kickback, bribe, or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for referring an individual to a person for the furnishing or arranging of the furnishing of any item or service for which payment may be made, in whole or in part, under the Medicaid program, or in return for obtaining, purchasing, leasing, ordering, or *355 arranging for or recommending, obtaining, purchasing leasing or ordering any goods, facility, item or service, for which payment may be made, in whole or in part, under the Medicaid program.
However, upon closer examination, there are two significant differences between the federal anti-kickback statute and the Florida anti-kickback statute. First, the federal statute contains several so-called "safe harbor" provisions that exclude certain types of payments from being considered "illegal remuneration." 42 U.S.C. § 1320a-7b(b)(3)(2000). Specifically, 42 U.S.C. § 1320a-7b(b)(3)(B)(2000) protects employer-employee payments for the provision of covered items or services from criminal prosecution. The federal medicaid statutes require participating states to provide transportation to those eligible for dental services. 42 U.S.C. § 1396a(a)(43)(2000); § 409.905(12), Fla. Stat. (2000). Therefore, the Florida anti-kickback statute without any "safe harbor" provisions criminalizes certain activity that is protected under the federal anti-kickback statute and stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Meadows, 304 F.3d at 1206.
Secondly, the federal anti-kickback statute contains a "knowing and willful" mens rea requirement. Under federal law, "in order to establish a `willful' violation of a statute, `the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'" Bryan v. United States, 524 U.S. 184, 192, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998) (citations omitted). In contrast, Florida's anti-kickback statute only requires that the defendant act "knowingly." In turn, "knowingly" is defined as "done by a person who is aware or should be aware of the nature of his or her conduct and that his or her conduct is substantially certain to cause the intended result." § 409.920(1)(d), Fla. Stat. (2000). This Florida definition of "knowingly" would include "mere negligence," thereby criminalizing activity that the federal statute intended to protect. Hanlester Network v. Shalala, 51 F.3d 1390, 1399 n. 16 (9th Cir.1995)("The legislative history demonstrates that Congress, by use of the phrase `knowingly and willfully' to describe the type of conduct prohibited under the anti-kickback laws, intended to shield from prosecution only those whose conduct `while improper, was inadvertent.'"). Again, enforcement of the Florida anti-kickback statute would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Meadows, 304 F.3d at 1206.
For these reasons, we conclude that the trial court properly found that there was implied conflict preemption and declared section 409.920(2)(e), Florida Statutes (2000), unconstitutional.[1]
Accordingly, we affirm.
NOTES
[1] In its order of dismissal, the trial court found other constitutional defects. Because the issues discussed above are dispositive, we do not consider the propriety of those rulings.