KLEIN, J.
Stopping payment on a check with intent to defraud can, by statute, subject the maker to triple the amount owed. In this case a property owner planning improvements issued a check for advance payment to a general contractor, but several days later, before the job was started, stopped payment and notified the contractor not to proceed. We conclude that there could have been no intent to defraud.
We review the facts in a light most favorable to the contractor, as we are reviewing the denial of a motion for directed verdict, Gersh v. Cofman, 769 So.2d 407 (Fla. 4th DCA 2000).
The owner, which operates a restaurant, wanted to renovate in 2002, and the work had to be completed in time for a November wedding. The contractor, DiTocco, was selected as the low bidder in July, 2002, and submitted a written contract to the owner. Because of the wedding the owner wanted a specific date for “final completion;” however, the contractor was willing to agree only to “substantial completion.” Drafts of contracts involving that issue, as well as others, were sent back and forth in July and early August.
Because of concerns about the contractor completing the project on time, the owner requested a liquidated damages clause which the contractor resisted. There was a telephone conversation on August 15, in which the contractor advised that it would agree only to a substantial completion date, not a final completion date, and no liquidated damages. The owner agreed to some, but not all of the contractor’s proposals.
On August 17, a Friday, the contractor sent a fax to the owner, and in response the owner’s lawyer left a telephone message agreeing to some of the changes and suggesting alternatives to others. The owner’s lawyer then notified the owner that “we are done,” and that the contractor wanted to be reimbursed for skylights it had ordered and had paid for. The owner then sent a check for $57,000, which was twenty percent of the total contract price, to the contractor. The contractor apparently received the check on Monday, August 20.
On Monday, August 20, the owner’s lawyer faxed the contractor the changes with which the owner agreed and asked if they were acceptable. The next day the contractor’s lawyer called and said the contractor had not agreed to the “final completion” language, and that this issue was a “deal killer.” On Wednesday, August 22, the owner’s lawyer informed the contractor’s lawyer by telephone, and the contractor by fax, that the owner was no longer interested in having the contractor do the renovations and was revoking its offer to form a contract. That same day the owner notified the bank to stop payment on the check.
The next day the contractor’s lawyer faxed a letter stating that a contract existed and consideration had been paid and accepted. The owner’s lawyer responded that there was no agreement because of *429 the final completion issue, and, in any event the contractor was obligated to mitigate damages. The contractor first became aware that payment had been stopped on the check on Friday, August 24.
Under the contract, work was to start “five days from the receipt of the last of the following documents, the building permit, written notice to proceed from owner.” The building permit had not been issued, and no work was performed on the property by this contractor.
One or two days before the owner stopped payment on the check, the owner contacted another contractor with whom it had done business in the past. It ultimately used that contractor without requiring a “final completion date.” The contract involved in this case was to be for $289,000, and the contract under which the work was actually performed was for $277,000.
The owner sought a declaratory judgment against the contractor on the issue of whether a contract existed, and the contractor counterclaimed for damages for breach of contract and triple damages for fraudulently stopping payment on a check. The jury found that a contract did exist and awarded damages for lost profits as well as damages under section 68.065, Florida Statutes (2001), in the amount of the check, which were tripled.
Section 68.065, Florida Statutes (2001), provides:
(1) In any civil action brought for the purpose of collecting a check .... the payment of which was refused by the drawee because of the lack of funds, credit, or an account, or where the maker or drawer stops payment on the check ... with intent to defraud, and where the maker or drawer fails to pay the amount owing, in cash, to the payee within 30 days following a written demand therefore ... shall be liable to the payee, in addition to the amount owing upon such check, draft, or order, for damages of triple the amount so owing.
The “intent to defraud” language, which was added to this statute in 1998, Chapter 98-297, Laws of Florida, section 1, has not yet been interpreted by any cases on point.
The elements of fraud are:
(1) a false statement of fact; (2) known by the defendant to be false at the time that it was made; (3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the representation; and (5) resulting damage or injury.
Nat’l Ventures, Inc. v. Water Glades 300 Condo. Ass’n, 847 So.2d 1070, 1074 (Fla. 4th DCA 2003).
Under the wording of the statute, the question is whether there was an intent to defraud at the time the owner notified the bank to stop payment. This was five days after the check was sent by the owner, and two days after it was received by the contractor. We conclude that as matter of law there was no intent to defraud, because it is undisputed that on the same day that the bank was notified to stop payment, the owner notified the contractor that it was not proceeding. Significant to our decision is the fact that this was an advance payment for work to be performed in the future, not payment for goods or services received.
The contractor argues that, even though no work was performed at the restaurant, the contractor had incurred expenses in preparing to go ahead with the contract based on being informed that the check had been sent. It contends that the owner received a benefit in that, by sending a check, it resulted in the contractor getting ready to start construction, which would benefit the owner in that once the permit *430 was issued, construction could be more quickly completed. This is, in our opinion, too speculative, and too reliant on conduct of the recipient of the check, to prove fraudulent intent by the maker.
If A, on Friday, gives a painter a check for $1,000 to paint his house, and over the weekend the painter does the work, A’s stopping payment on Monday could subject A to triple damages under the statute, because the painter did the work in exchange for the payment. If, however, A stops payment on Monday, before any work is done,- A has received nothing, and stopping payment could not amount to intent to defraud. If the painter in the second example had, over the weekend, purchased the paint, A may be found liable for consequential damages, just as the owner was here.
An example of a factual situation in which the maker of the check could be held for triple damages can be found in Maung v. National Stamping, LLC, 842 So.2d 214 (Fla. 3d DCA 2003), in which the maker had paid by check for the merchandise, but stopped payment after receiving it. If the maker had stopped payment before he received the goods, he could not have been held liable under the statute. The trial court should have directed a verdict on the statutory claim.
The owner has not challenged the finding of breach of contract, but does argue that the contractor’s testimony showed that the contractor would have had to pay five percent of its profit on the job to a consultant, which is not disputed. The award for lost profits on the breach of contract claim must accordingly be reduced by that amount. Reversed.
WARNER and POLEN, JJ., concur.