902 So.2d 278 (2005)
The STATE of Florida, Appellant,
v.
Shelley WOLLAND, Appellee.
No. 3D04-1380.
District Court of Appeal of Florida, Third District.
May 25, 2005.
*279 Charles J. Crist, Attorney General, and Paulette R. Taylor, Assistant Attorney General, for appellant.
Joseph S. Paglino, Hollywood, for appellee.
Before GREEN, RAMIREZ, and WELLS, JJ.
WELLS, J.
The State appeals the dismissal of 115 counts of making false statements to the Florida Agency for Health Care Administration wherein the trial court concluded that the statute on which these counts are predicated was preempted by federal law. On the following analysis, we reverse.

Background
The State filed an information charging Shelley Wolland with one hundred and fifteen (115) counts of Medicaid fraud/filing false claims and one count of first degree grand theft. Counts 1 through 115 of the information alleged that on various dates *280 between January 1, 2001 and December 31, 2001, Wolland "did knowingly and unlawfully, make ... a false statement or false representation of material fact ... to the Agency for Health Care Administration ... in violation of s. 409.920(2)(a) Florida Statutes." Count 116 alleged the theft of over one hundred thousand dollars ($100,000) from the Agency for Health Care Administration.
Wolland filed a motion to dismiss, arguing that subsection 409.920(2)(a), Florida Statutes (2001) of Florida's Medicaid Provider Fraud Statute was unconstitutional both as applied to her and on its face because it is preempted by federal law. Section 409.920 provides in relevant part:
(2) It is unlawful to:
(a) Knowingly make, cause to be made, or aid and abet in the making of any false statement or false representation of a material fact, by commission or omission, in any claim submitted to the agency or its fiscal agent for payment.
The parallel provision of the federal Social Security Act, 42 U.S.C. § 1320a-7b(a) makes it unlawful to:
(1) knowingly and willfully make[ ] or cause[ ] to be made any false statement or representation of a material fact in any application for any benefit or payment under a Federal health care program....
Wolland, pointing out that the federal act requires that the act be done "knowingly and willfully" while the Florida act requires only that the act be done "knowingly," maintained that the omission of the "willfully" requirement from the Florida statute rendered conduct that was not criminal under the federal statute unlawful under the Florida Statute.[1] Thus, based on this distinction, she argued that the Florida law should be held unconstitutional. Wolland additionally maintained that because the grand theft charge, count 116, was based on the aggregate of counts 1-115, that count should be dismissed as well.
Shortly after Wolland filed her motion, this Court issued State v. Harden, 873 So.2d 352 (Fla. 3d DCA 2004), affirming a trial court's order finding subsection 409.920(2)(e)[2], the anti-kickback provision of Florida's Medicaid provider fraud statute, to be unconstitutional.[3] In Harden we decided that subsection 409.920(2)(e) impliedly conflicted with the federal anti-kickback statute, and thus was preempted under the Supremacy Clause. This conclusion rested on two grounds. First, we concluded that as to subsection 409.920(2)(e), federal legislation was in place which protected the particular behavior at issue but because the Florida provision accorded no similar safe harbor, *281 it obstructed the objectives and purposes of the federal act. Harden, 873 So.2d at 355 (citation omitted). Second, we concluded that because subsection 409.920(2)(e) criminalized only knowing conduct, whereas the federal act criminalized conduct that was both knowing and willful, enforcement of Florida's law would act as an obstacle to the purposes and goals of the federal act:
the federal anti-kickback statute contains a "knowing and willful" mens rea requirement. Under federal law, "in order to establish a `willful' violation of a statute, `the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'" Bryan v. United States, 524 U.S. 184, 192, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998) (citations omitted). In contrast, Florida's anti-kickback statute only requires that the defendant act "knowingly." In turn, "knowingly" is defined as "done by a person who is aware or should be aware of the nature of his or her conduct and that his or her conduct is substantially certain to cause the intended result." § 409.920(1)(d), Fla. Stat. (2000). This Florida definition of "knowingly" would include "mere negligence," thereby criminalizing activity that the federal statute intended to protect. Hanlester Network v. Shalala, 51 F.3d 1390, 1399 n. 16 (9th Cir.1995)("The legislative history demonstrates that Congress, by use of the phrase `knowingly and willfully' to describe the type of conduct prohibited under the anti-kickback laws, intended to shield from prosecution only those whose conduct `while improper, was inadvertent.'"). Again, enforcement of the Florida anti-kickback statute would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.
Harden, 873 So.2d at 355 (citation omitted).
Applying the analysis outlined in Harden, the trial court in this case concluded that the Florida false claims provision, subsection 409.920(2)(a), was preempted by the federal health care false claims provision, 42 U.S.C. § 1320a-7b(a)(1), and that Wolland's motion to dismiss should be granted as to counts 1 through 115. We disagree. Using the same standard employed in Harden, we conclude that subsection 409.920(2)(a) does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress as delineated in 42 U.S.C. § 1320a-7b(a)(1), and that Wolland's claim of preemption should have been rejected.

The Doctrine of Preemption
The Supremacy Clause, article VI, clause 2, of the United States Constitution authorizes Congress to preempt state law, either expressly in a federal act or by so completely taking over a field of law as to create an inference of federal exclusivity. See Harrell v. Florida Const. Specialists, 834 So.2d 352, 355 (Fla. 1st DCA 2003); Jennifer S. Hendricks, Preemption of Common Law Claims and the Prospects for FIFRA: Justice Stevens Puts The Genie Back In The Bottle, 15 DUKE ENVTL. L. & POL'Y F. 65, 69-70 (2004).
Federal preemption may also be implied where a conflict exists between a federal and a state law to the extent that it is either physically impossible to comply with the dictates of both sets of laws or where dual compliance is technically possible but state law creates an obstacle to fulfilling federal policy and goals.[4]English *282 v. Gen. Elec. Co., 496 U.S. 72, 78-79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990) (enumerating the three circumstances in which state law is pre-empted under the Supremacy Clause as (1) where Congress explicitly defines the extent to which its enactments pre-empt state law; (2) where state law regulates conduct in a field that Congress intended the Federal Government to occupy exclusively; and (3) to the extent that state law actually conflicts with federal law); see also Hendricks, supra at 70.

Application of Preemption Doctrine
Here, as in Harden, there is no explicit preemption. There is also no indication that at issue is a field that Congress intended the federal government to occupy exclusively, and, as in Harden, physical compliance is not implicated. Thus we, like the Harden court, look to whether subsection 409.920(2)(a) stands as an obstacle to the execution and accomplishment of the objectives and goals of Congress to determine whether preemption by implication should be found.[5] For a number of reasons, we find that it does not.
First, we start by presuming against preemption, a presumption particularly strong because federal and state false claims legislation share common goals.[6]See Hernandez v. Coopervision, Inc., 661 So.2d 33, 34 (Fla. 2d DCA 1995) (confirming that "there is a long-standing presumption against federal preemption of the exercise of the power of the states"); Forum v. Boca Burger, Inc., 788 So.2d 1055, 1061 (Fla. 4th DCA 2001) (recognizing a presumption against preemption); In re Pharmaceutical Industry Average Wholesale Price Litigation, 321 F.Supp.2d 187, 198 (D.Mass.2004) (confirming that the presumption against federal preemption of a state statute designed to foster public health has special force when it appears that the two governments are pursuing common purposes; that the "strong medicine" of federal preemption is not to be casually dispensed especially when the federal statute creates a program, such as Medicaid, that utilizes "cooperative federalism"; and that Medicaid is the paradigmatic program of cooperative federalism where the federal and state governments share a common goal) (citations omitted).
Second, although the federal health care false claims provision criminalizes the knowing and willful making of a false claim, this behavior is frequently prosecuted under 18 U.S.C. § 287, the Federal False Claims Act, legislation which, like subsection 409.920(2)(a), contains no express willfulness requirement:

False, fictitious or fraudulent claims

Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be *283 subject to a fine in the amount provided in this title.
18 U.S.C. § 287 (emphasis added).[7]
Prosecution under the Federal False Claims Act has proceeded notwithstanding *284 its lack of an express willfulness requirement because "[i]t is implicit in the filing of a knowingly false claim that the claimant intends to defraud the government, and hence unnecessary to charge willfulness separately." United States v. Catton, 89 F.3d 387, 392 (7th Cir.1996); United States v. Beasley, 550 F.2d 261, 273-74 (5th Cir.1977)(observing "`[g]enerally, under our system of criminal law, an individual is only punished when he has the requisite criminal intent accompanying the performance of the act. To have this requisite intent, the individual must be aware that what he is doing is wrong.' (Citations omitted) Section 287 certainly meets the test even though the word `willful' does not appear in its text"); see also United States v. Blecker, 657 F.2d 629, 634 (4th Cir.1981) (stating that knowledge that a claim is false is sufficient under the False Claims Act, 18 U.S.C. § 287).
Thus, the fear articulated in Harden that the Florida definition of "knowingly" might encompass "mere negligence," thereby criminalizing activity that the federal statute may have intended to protect, is not present when considering section 409.920(2)(a).[8] Simply put, one cannot negligently "[k]nowingly make ... [a] false *285 statement... in [a] claim submitted to the agency ... for payment." § 409.920(2)(a), Fla. Stat. (2001). Rather, the language of subsection 409.920(2)(a) reflects the same standard which has been held to establish a violation of 42 U.S.C. § 1320a-7b(a)(1):
Initially, we hold that ... "knowledge of falsity" is an element of Medicaid fraud pursuant to 42 U.S.C. § 1320a-7b(a).... [I]n defining the elements of the offense ... the defendant must not only have made false claims, but he must have known at the time he was making such claims that they were, in fact, false. The legislative history, to which we look to discern the mens rea for a specific offense ... supports [this] conclusion.... We therefore hold ... to be convicted of medicaid fraud, pursuant to 42 U.S.C. § 1320a-7b(a), a defendant must know that the claims being submitted are in fact false....
U.S. v. Laughlin, 26 F.3d 1523, 1525 (10th Cir.1994) (citations omitted); United States v. Larm, 824 F.2d 780, 782 (9th Cir.1987)(observing that "to prove Medicaid fraud, the government must show a knowingly false statement of material fact made in an application for benefits from a federally approved state Medicaid plan").[9]
Subsection 409.920(2)(a) is, therefore, in harmony with the principles applicable to prosecutions under the federal false claims enactments. By its terms, subsection 409.920(2)(a) proscribes presentation of a claim with knowledge that the claim is false and thereby precludes prosecution for unintended violations. Interpreting "knowingly" as implicitly including willful behavior does no more than give a fair construction to the term as used in subsection 409.920(2)(a). Moreover, in concluding that "knowingly" describes the same behavior as that done "willfully"as our legislature has since clarifiedwe do no more than follow a basic precept of both Florida and federal criminal law. As the Florida Supreme Court in Chicone v. State, 684 So.2d 736, 743-44 (Fla.1996), confirmed, we will ordinarily presume, absent an express indication of a contrary intent, that the Legislature intends a statute defining a criminal violation to contain a mens rea requirement, even when expressly silent on the subject. "[A]n express provision dispensing with guilty knowledge will always control, of course, since in that instance the Legislature will have made its intent clear," but in the absence of such a provision, a criminal statute will be presumed to include a broad applicable scienter requirement. State v. Giorgetti, 868 So.2d 512, 516 (Fla.2004); see also Morissette v. United States, 342 U.S. 246, 250-252, 72 S.Ct. 240, 96 L.Ed. 288 (1952)("[a]s the states codified the common law of crimes, even if their enactments were silent on the subject [of mens rea or intent], their courts assumed that the omission did not signify disapproval of the principle but merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation. Courts, with little hesitation or division, found an implication of the requirement as to offenses that *286 were taken over from the common law").[10]
In sum, considering the objective of Congress to limit and punish health care fraud,[11] and considering the language used in subsection 409.920(2)(a), we conclude that notwithstanding the failure of that subsection to contain the term "willfully," the federal and state enactments regarding false claims are in harmony in purpose and effect, and the charges at issue should not have been dismissed as preempted by federal law. Any statement to the contrary in Harden, is not, therefore, determinative and should be limited to that case especially since this court's opinion in Harden clearly turned on the absence of safe harbor provisions in Florida's legislation. Wolland's motion to dismiss should, therefore, have been denied and the State's prosecution of the 115 counts for making false statements to the Florida Agency for Health Care Administration should have been allowed to proceed. See State v. Williams, 343 So.2d 35, 37 (Fla.1977)(observing that it is our duty to "sustain legislative enactments when possible"); North Port Bank v. State Dep't of Revenue, 313 So.2d 683, 687 (Fla.1975)(same).
The order under review is therefore reversed and the cause remanded with directions to reinstate the charges.
NOTES
[1] Although not applicable to the instant case, section 409.920, was revised by Laws 2004, c. 2004-344, section 8, effective July 1, 2004, to provide:

(1) For the purposes of this section, the term:
...
(d) "Knowingly" means that the act was done voluntarily and intentionally and not because of mistake or accident. As used in this section, the term "knowingly" also includes the word "willfully" or "willful" which, as used in this section, means that an act was committed voluntarily and purposely, with the specific intent to do something that the law forbids, and that the act was committed with bad purpose, either to disobey or disregard the law.
[2] Subsection 409.920(2)(e), Florida Statutes (2001) provides in relevant part:

(2) It is unlawful to:
...
(e) Knowingly solicit ... any kickback ... under the Medicaid program....
[3] We issued our opinion in Harden on March 10, 2004. The State filed its appeal to the Florida Supreme Court on April 7, 2004, and oral argument was held April 5, 2005.
[4] For example, "[a] state law requiring warning labels to be orange would be preempted by `impossibility preemption' if federal law required labels to be red. A state law requiring many warnings on a label might be preempted if it created an `obstacle' to a federal goal of keeping labels simple and easy to understand." Hendricks, supra at 70.
[5] Since there are no safe harbor provisions in the federal act relating to false claims, we do not address the first ground on which Harden determined that Florida's anti-kickback provision obstructed the objectives and purposes of the federal act.
[6] Working in tandem with the states is a recognized goal of the federal and state Medicaid acts. See Jonathan Cone et al., Health Care Fraud, 40 AM. CRIM. L. REV. 713, 767-68 (2003)(footnotes omitted)(observing that while historically, states were unwilling to investigate Medicaid fraud and abuses because of the costs, the federal government now provides the states with funding for such investigations).
[7] See Cone, supra note 4, at 753-54 ("[t]he False Claims Act is a federal fraud statute frequently used in prosecuting Medicare and Medicaid fraud"); Lissa Bourjolly et al., Health Care Fraud, 41 Am.Crim.L.Rev. 751, 791 (2004) ("[t]he False Claims Act is a federal fraud statute frequently used in prosecuting Medicare and Medicaid fraud"); see also U.S. v. Batchelder, 442 U.S. 114, 123-24, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979)(observing that the court "has long recognized that when an act violates more than one criminal statute, the Government may prosecutes [sic] under either so long as it does not discriminate against any class of defendants"); U.S. v. NHML, Inc., 225 F.3d 660, 2000 WL 420683, *8 (6th Cir.2000)(observing that "[a]ppellants argue that the government should have indicted them under 42 U.S.C. § 1320a-7b(a). However, the government correctly points out that when a defendant's acts violate more than one criminal statute the government has discretion to prosecute him under any of the statutes as long as the choice is not discriminatory"); U.S. v. Adler, 623 F.2d 1287, 1290 (8th Cir.1980)(concluding that the fact that the indictment charging the defendant with making false statements on claims submitted under the Medicaid and Medicare programs was brought under the general provisions prohibiting false claims to the government instead of the specific provisions of the statute covering Medicare fraud, did not render the indictment dismissible); U.S. v. Gordon, 548 F.2d 743, 744-45 (8th Cir.1977)(concluding that in bringing criminal charges for allegedly making false and material statements for the purpose of obtaining Medicare payments, the government could prosecute under either the general statute making it a felony to make false and material statements to the government or under the more specific statute relating to making false statements for the purpose of obtaining Medicare payments). See generally Hudson v. U.S., 522 U.S. 93, 100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997)(citing to United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), where the defendant had been convicted of, "inter alia, violating the criminal false claims statute, 18 U.S.C. § 287, based on his submission of 65 inflated Medicare claims"); U.S. v. Bolden, 325 F.3d 471, 494 (4th Cir.2003)(concluding that evidence was sufficient for conviction under false claims statute, 18 U.S.C. § 287, on charges that claims submitted to Medicaid were false); U.S. v. Syme, 276 F.3d 131, 142-48 (3d Cir.2002)(upholding a jury verdict under 18 U.S.C. § 287 for filing a false claim for Medicaid reimbursement); U.S. v. Eastern Medical Billing, Inc., 230 F.3d 600, 602 (3d Cir.2000) (where the defendants were charged with "eleven counts of submitting false claims to the Health Care Financing Administration (`HCFA') of the Department of Health and Human Services, in violation of 18 U.S.C. § 287" relating to Medicaid and Medicare services); U.S. v. NHML, Inc., 225 F.3d 660, 2000 WL 420683 at 10 (observing that a Medicaid fraud may be prosecuted under either 42 U.S.C. § 1320a-7b(a) or 18 U.S.C. § 287 "as long as the choice is not discriminatory," and that "to violate 18 U.S.C. § 287 one need only submit a medicare claim to the government knowing that the claim is false"); U.S. v. Gilliard, 133 F.3d 809, 811 (11th Cir.1998)(affirming conviction for submitting false claims to Medicare and Medicaid, in violation of 18 U.S.C. § 287); U.S. v. Bapack, 129 F.3d 1320, 1322 (D.C.Cir.1997)(affirming conviction for among other things, "submitting false Medicare and Medicaid claims for payment (18 U.S.C. § 287)"); U.S. v. Abud-Sanchez, 973 F.2d 835 (10th Cir.1992)(citing to 18 U.S.C.A. § 287, and concluding that vacation of sentence and remand would be required where defendant pled guilty to Medicare and Medicaid fraud because the record did not reveal what percentage of loss stemmed from defendant's criminal activity); U.S. v. Nazon, 940 F.2d 255, 258-60 (7th Cir.1991)(citing to 18 U.S.C.A. § 287, and concluding that the evidence justified a conscious avoidance instruction in a Medicaid prosecution, where a physician deliberately avoided familiarizing himself with the rules, conditions, and law controlling his Medicaid claim submissions); U.S. v. Campbell, 845 F.2d 1374, 1381-82 (6th Cir.1988)(affirming conviction under false claims act for ophthalmologist charged with billing Medicare for laser treatments which were neither performed nor necessary); U.S. v. Sazama, 88 F.Supp.2d 1270, 1271 (D.Utah 2000)(citing to 18 U.S.C. § 287, where the defendant "submitted 79 false insurance billings to Medicaid and 31 such claims to Civilian Health and Medical Program of the Uniformed Service ("CHAMPUS"), a federally funded medical benefits program"); U.S. v. Diamond, 657 F.Supp. 1204, 1204-1205 (S.D.N.Y.1987)(observing that a physician had been tried under 18 U.S.C. § 287 for submitting false Medicaid claims); U.S. v. Cone, 27 Fed.Appx. 772, 2001 WL 1336244 (9th Cir.2001)(citing to 18 U.S.C.A. § 287, and concluding that conviction for fraud involving defendant's Medicare and Medicaid billing practices was supported by accomplice testimony).
[8] In Harden we relied in part on Hanlester Network v. Shalala, 51 F.3d 1390, 1399 n. 16 (9th Cir.1995), wherein the Ninth Circuit observed "[t]he legislative history demonstrates that Congress, by use of the phrase `knowingly and willfully' to describe the type of conduct prohibited under the anti-kickback laws, intended to shield from prosecution only those whose conduct `while improper, was inadvertent.'" Hanlester cited to H.R. No. 96-1167, 96th Cong., 2d Sess. 59 (1980) U.S.Code Cong. & Admin.News, (1980), 5526, 5572. Hanlester, 51 F.3d at 1399 n. 16. A review of the cited history demonstrates the knowing and willful distinction addressed in Hanlester related solely to a specific concern regarding the anti-kickback legislation:

CRIMINAL STANDARDS FOR CERTAIN MEDICARE- AND MEDICAID-RELATED CRIMES (SECTION 316)
THE SECTION PROVIDES THAT CRIMINAL PENALTIES FOR SOLICITATION OR PAYMENT OF KICKBACKS, BRIBES, REBATES, OR OTHER REMUNERATION IN EXCHANGE FOR MEDICARE OR MEDICAID BUSINESS APPLY ONLY IN CASES WHERE SUCH CONDUCT IS UNDERTAKEN KNOWINGLY AND WILLFULLY. UNDER CURRENT LAW, THE SOLICITATION OR RECEIPT OF ANY REMUNERATION IN RETURN FOR REFERRING A MEDICARE OR MEDICAID PATIENT TO ANOTHER PARTY OR IN RETURN FOR PURCHASING, LEASING OR ORDERING ANY SERVICE OR SUPPLY COVERED UNDER MEDICARE OR MEDICAID CONSTITUTES A FELONY, PUNISHABLE BY A FINE OF UP TO $25,000 OR 5 YEARS IMPRISONMENT, OR BOTH. THE OFFER OR PAYMENT OF KICKBACKS, BRIBES, OR REBATES FOR SUCH PURPOSES IS ALSO A FELONY, PUNISHABLE TO THE SAME EXTENT. THE COMMITTEE IS CONCERNED THAT CRIMINAL PENALTIES MAY BE IMPOSED UNDER CURRENT LAW TO AN INDIVIDUAL WHOSE CONDUCT, WHILE IMPROPER, WAS INADVERTENT. ACCORDINGLY, THE SECTION CLARIFIES CURRENT LAW TO ASSURE THAT ONLY PERSONS WHO KNOWINGLY AND WILLFULLY ENGAGE IN THE PROSCRIBED CONDUCT COULD BE SUBJECT TO CRIMINAL SANCTIONS.
H.R. No. 96-1167, 96th Cong., 2d Sess. 59 (1980) U.S.Code Cong. & Admin.News, (1980), 5526, 5572 (emphasis added).
Thus, we find no conflict between the statements made in Harden and Hanlester and our analysis herein.
[9] See generally Larm, 824 F.2d at 783 (because "an element of the crime is the specific intent to make a false statement," knowledge of falsity must be established); Madness, L.P. v. DiTocco Konstruction, Inc., 873 So.2d 427, 429 (Fla. 4th DCA 2004)(emphasis added)(observing that "[t]he elements of fraud are: (1) a false statement of fact; (2) known by the defendant to be false at the time that it was made; (3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the representation; and (5) resulting damage or injury"); Nat'l Ventures, Inc. v. Water Glades 300 Condo. Ass'n, 847 So.2d 1070, 1074 (Fla. 4th DCA 2003) (same).
[10] The Supreme Court in Morissette recognized that use of the word "knowing" in an act criminalizing conversions "require[d] more than knowledge that defendant was taking property into his possession. He must have had knowledge of the facts, though not necessarily the law, that made the taking a conversion," and that "whether the mental element that Congress required be spoken of as knowledge or as intent, would not seem to alter its bearing on guilt...." The Court was addressing 18 U.S.C. § 641, providing that "[w]hoever embezzles, steals, purloins, or knowingly converts to his use ... money, or thing of value ... [s]hall be fined ... or imprisoned...." Morissette, 342 U.S. at 248 n. 2, 72 S.Ct. 240.
[11] See Cone, supra note 4, at 715 (footnotes omitted)(observing "[a]s health care fraud costs taxpayers nearly $100 billion a year, federal and state agencies have made health care fraud prosecution a primary focus").